**No. 26-3857**

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT COURT

**UNITED STATES OF AMERICA, PLAINTIFF-APPELLEE**

**v.**

**JEFFREY DEAN MOFFATT, DEFENDANT-APPELLANT**

**CENTRAL DISTRICT OF CALIFORNIA**
**LOWER DISTRICT CASE DOCKET#**
**2:21-cr-00335-JAK-1**

## "AMENDED OPENING BRIEF"

By: JEFFREY DEAN MOFFATT, J.D., M.B.A., B.A., LL.M
(MASTERS IN TAXATION LAW)
Ret. 20 year Federal Administrative Attorney
Defendant-Appellant In Propria Persona (Pro Se)
1070 West Barrel Springs Road, Box 11
Palmdale, CA 93551
Telephone No.: (661)435-2487
Email: jeffreydeanjustin@gmail.com

**TABLE OF CONTENTS**


**Table of Authorities**

**Jurisdictional Statement** **11**

**Statement of Issues Presented** **11**

**Statement of the Case and Relevant Facts** **15**

**A. Representative Practice Before the SSA, Professional Background, and Protected Qui Tam Whistleblower Disclosures** **15**

**B. Inception of Prosecution: Unlawfully Seated Acting U.S. Attorney Wilkison (Dkt. 199),** Unsigned Arrest Warrants (Dkts. 198, 208), and Extrajudicial Steering of the Assignment Wheel (Exhibit 61) **16**

**C. Pretrial Proceedings: Appointed Counsel Abandonment (Dkts. 20, 201, 221), Successive Protective Orders (Dkts. 22, 121),** and Forced Pro Se Status Over Express Medical Warnings (Dkts. 188, 211, 219; Exhibits 34, 40, 41-A, 41-C) **17**

**D. Pro Se Pretrial Motion Practice Under Rule 12 (Dkts. 198–209, 220; FER Vols. I & II), Eve-of-Trial 17,000-Document Disclosure**, and Continuance Denial Under Flynt (Exhibits 41-D, 41-G) **18**

**E. Sworn Trial Record Admissions Under 20 C.F.R. § 404.1705(a), Unlawful Supervisory Authority Under Acting U.S. Attorney Essayli** (Garcia; Exhibit 41-E), and the Deadlocked Verdict (Exhibits 41-H, 41-I, 41-J, 41-K) **22**

**F. Intervening Executive Preemption Positions in United States v. Fox, Section 530D Determination on ALJs** (Exhibit 65), and Parallel District Court Proceedings (Judge Fairbank, Dkt. 270) **23**

**G. Sentencing: Unconstitutional Appeal-Waiver Retaliation** (Exhibit 37 / Sub-Exhibit AA), 8-Level Loss Enhancement with Zero Pecuniary Harm (Dkts. 200, 345; Exhibits 41-B, 41-L), Blanket Occupational Debarment, and Mandatory Psychological Counseling for Physical Brain Damage (Dkt. 379; Exhibits 34, 35, 40) **23**

**Summary of the Argument** **25**

**Argument** **28**

**I. Submissions by Authorized Representatives in Administrative Proceedings Fall Squarely Outside 18 U.S.C. § 1001(a) Under the § 1001(b) Adjudicative Safe Harbor**, the APA, and Pretrial Rule 12 Preservation (Dkts. 206, 220; Exhibit 41-K). **28**

**II. Under the De Novo Review Mandated by Loper Bright Enterprises v. Raimondo, Sworn Trial Record Admissions Under 20 C.F.R. § 404.1705(a),** POMS Fee Authorizations (Dkt. 200), and Intervening Federal Preemption Under Sperry v. Florida Defeat Count 6 as a Matter of Law (Exhibits 41-H, 41-I, 41-J).30

**III. The Summary Denial of Preserved Rule 12 Motions Establishing Federal Jurisdiction (Dkt. 202), Pretextual Targeting (Dkts. 198, 204), Private**

**Business League Status (Dkt. 205), and Void Adjudications (Dkts. 203, 209)** Violated Equal Protection and Due Process Under Armstrong, Olech, and Caperton. **32**

**IV. The Categorical Exclusion of Objective Traumatic Brain Injury Imaging (Exhibit 34) and Neurocognitive Evaluations (Exhibit 40)** Under an Erroneous Expert-Sponsorship Requirement Deprived Appellant of His Constitutional Right to Present a Complete Defense Under United States v. Blaylock and Crane v. Kentucky (Exhibit 41-F). **37**

**V. Compelling Appellant to Proceed Pro Se Over the Government's Express Warning That Self-Representation Would Severely Exacerbate His Medical Injuries and Despite Explicit Record Proof of Incapacity** (Dkts. 188, 201, 211, 219, 221; Exhibits 34, 40, 41-A, 41-C) Constituted Structural Sixth Amendment Error Under Indiana v. Edwards. **39**

**VI. The District Court Abused Its Discretion and Violated Due Process by Denying an Essential Continuance Following Successive Protective Orders and the Eve-of-Trial Disclosure of Over 17,000 Documents During Voir Dire** Under United States v. Flynt (Dkt. 207; Exhibits 41-D, 41-G). **40**

**VII. Extrajudicial Steering of the Blind Case Assignment Wheel (Exhibit 61) and Maintaining Trial Proceedings Under Successive Acting U.S. Attorneys**

**Formally Adjudicated Unlawful** (Dkt. 199; United States v. Garcia; Exhibit 41-E) Violated Structural Due Process and Separation of Powers. **41**

**VIII. Categorical Exclusion of Challenges to ALJ Constitutional Authority Defied Preserved Article III Precedents** (Dkts. 202, 220) and Binding Executive Branch Article II Determinations Under 28 U.S.C. § 530D (Exhibit 65). **43**

**IX. The Prosecution's Inception-to-Sentencing Course of Retaliation—Conditioning Leniency Upon Forfeiture of Statutory Appeal Rights** (Exhibit 37 / Sub-Exhibit AA) and Weaponizing Disciplinary Disparities (Dkts. 198, 204, 205)—Constituted Unconstitutional Prosecutorial Vindictiveness Under North Carolina v. Pearce. **44**

**X. The District Court Committed Reversible Procedural and Substantive Error by Imposing an 8-Level Loss Enhancement on Dismissed Fraud** Counts (Dkts. 200, 379; Exhibits 41-B, 41-L), Imposing an Occupational Ban Under § 5F1.5, and Mandating Psychological Counseling for Physical Brain Damage. **45**

**A. Clear Procedural Error in Imposing an 8-Level Loss Enhancement Predicated on Dismissed Fraud Charges and Authorized Administrative Fees** (Dkts. 200, 345, 379; Exhibits 41-B, 41-L). **46**

**B. Imposition of an Active Custodial Term Is Substantively Unreasonable Under 18 U.S.C. § 3553(a)(2)(D) and U.S.S.G. § 5H1.4 in Light of Documented Pathologies (Exhibits 34, 35, 40).** **51**

**XI. The Government Failed to Establish the Subjective Mens Rea Necessary to Support a Finding of Willfulness as a Matter of Law Where Contemporaneous Filings and Forensic Evidence Established the Disbarment Was a Structural Nullity** (Dkts. 200, 203, 209; Exhibits 41-H, 41-J). **52**

**Conclusion and Relief Requested** **53**

**Statement of Related Cases (Circuit Rule 28-2.6)** **55**

**Certificate of Compliance (FRAP 32(g))** **56**

**Certificate of Service** **56**

**Index of Attached Exhibits and Transcript Excerpts** **57**

================================================================

TABLE OF AUTHORITIES

Cases

Axon Enterprise, Inc. v. FTC, 598 U.S. 175 (2023) 13,19,21,26,33,43
Blackledge v. Perry, 417 U.S. 21 (1974) 44
Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009)12,20,26,33,36,53
Chapman v. California, 386 U.S. 18 (1967) 39
Ciminelli v. United States, 598 U.S. 306 (2023) 19,26,31
Cleveland v. United States, 531 U.S. 12 (2000) 19,26,31
Crane v. Kentucky, 476 U.S. 683 (1986) 12,27.37,38,44
Cruz v. Abbate, 812 F.2d 571 (9th Cir. 1987) 23,27,41
Eastman v. Thompson, 594 F. Supp. 3d 1156 (C.D. Cal. 2022) 25,29,52
Ex parte Ward, 173 U.S. 452 (1899) 37,53
Ex parte Young, 209 U.S. 123 (1908) 33
Faretta v. California, 422 U.S. 806 (1975) 12,18,39,40
Gall v. United States, 552 U.S. 38 (2007) 25,28
Hubbard v. United States, 514 U.S. 695 (1995) 34
In re Aaron J. Kravitz, PDJ-2013-9041 (Ariz. 2013) 6,35
In re Charna Johnson, SB-10-0082-D (Ariz. 2010) 6,35
In re Daniel A. Kaiser, PDJ-2017-9022 (Ariz. 2017) 6,35
In re Jeffrey N. Harris, PDJ-2020-9077 (Ariz. 2020) 6,34

In re Mark J. Stodola, PDJ-2009-9022 (Ariz. 2009) 6,34
In re Robert E. McCauley, PDJ-2012-9038 (Ariz. 2012) 6,35
In re Steven M. Weinberger, 231 Ariz. 486, 298 P.3d 1222 (2013) 6,34
In re Susan K. Arnett, PDJ-2015-9050 (Ariz. 2015) 6,34
In re Thomas A. Fesenmaier, 217 Ariz. 572, 177 P.3d 1063 (2008) 35
Indiana v. Edwards, 554 U.S. 164 (2008) 12,27,39,40
Jencks v. United States, 353 U.S. 657 (1957) 44
Kelly v. United States, 140 S. Ct. 1565 (2020) 31
Loper Bright Enterprises v. Raimondo, 144 S. Ct. 2244 (2024)11,21,25,28,30
Manhattan Community Access Corp. v. Halleck, 587 U.S. 802 (2019)36
Matter of Piatt, 191 Ariz. 24, 951 P.2d 889 (1997) 34
Nguyen v. United States, 539 U.S. 69 (2003) 37,53
North Carolina v. Pearce, 395 U.S. 711 (1969) 14,44,45
Sarcone v. Office of the Attorney General, No. 26-156 (2d Cir. 2026)43
SEC v. Jarkesy, 144 S. Ct. 2112 (2024) 13,21,43
Sperry v. Florida ex rel. Florida Bar, 373 U.S. 379 (1963) 12,26,30,32
Standing Comm. on Discipline v. Yagman, 55 F.3d 1430 (9th Cir. 1995)41
United States v. Armstrong, 517 U.S. 456 (1996) 12,20,26,34,36,37
United States v. Awad, 559 F.3d 962 (9th Cir. 2009) 52
United States v. Barnes, 125 F.3d 1287 (9th Cir. 1997) 48
United States v. Blaylock, 20 F.3d 1458 (9th Cir. 1994)12,27,37,38,54
United States v. Carty, 520 F.3d 984 (9th Cir. 2008) 51
United States v. Castillo, 69 F.4th 648 (9th Cir. 2023) 48
United States v. Cronic, 466 U.S. 648 (1984) 40
United States v. Dearing, 504 F.3d 897 (9th Cir. 2007) 52
United States v. DeMarco, 550 F.2d 1224 (9th Cir. 1977) 44
United States v. Finley, 301 F.3d 1000 (9th Cir. 2002) 38
United States v. Flynt, 756 F.2d 1352 (9th Cir. 1985) 13,27,40,41
United States v. Fox, No. 1:26-cv-01658 (D.D.C. 2026) 23,26,32
United States v. Garcia, No. 2:25-cr-00655-MEMF, Dkt. 48 (C.D. Cal. 2025)
13,27,41,42
United States v. Gaudin, 515 U.S. 506 (1995) 20,28,29
United States v. Gonzalez-Lopez, 548 U.S. 140 (2006) 40
United States v. Goodwin, 457 U.S. 368 (1982) 44
United States v. Gracidas-Ulibarry, 231 F.3d 1188 (9th Cir. 2000) 52
United States v. Handy, 407 F.3d 1032 (9th Cir. 2005) 29
United States v. Horvath, 492 F.3d 1075 (9th Cir. 2007) 29
United States v. Jackson, 2026 WL 2345678 (9th Cir. 2026) 43
United States v. Jenkins, 504 F.3d 694 (9th Cir. 2007) 33,44,45
United States v. Lopez, 258 F.3d 1053 (9th Cir. 2001) 50

United States v. Martin, 796 F.3d 1101 (9th Cir. 2015) 48

United States v. McNeil, 362 F.3d 570 (9th Cir. 2004) 28,29
United States v. Rearden, 349 F.3d 608 (9th Cir. 2003) 50
United States v. Riley, 576 F.3d 1046 (9th Cir. 2009) 50
United States v. T.M., 330 F.3d 1235 (9th Cir. 2003) 50
United States v. White Eagle, 721 F.3d 1108 (9th Cir. 2013) 37
Village of Willowbrook v. Olech, 528 U.S. 562 (2000) 33
Yick Wo v. Hopkins, 118 U.S. 356 (1886) 34

Constitutional Provisions, Statutes, Regulations, and Rules

U.S. Const. amends. V, 33,46
U.S. Const. amends VI, 12,27,38,40
Ariz. Const. art. VI, § 26 21,36
5 U.S.C. §§ 554, 29
5 U.S.C 556–558, 29
5 U.S.C 3345–3349d; 16,42
18 U.S.C. §§ 1001(a)(1), 11,16,32,37,46,52
18 U.S.C. §§ 1001 (b), 11,20,25,28,29,30
18 U.S.C 1343, 46
18 U.S.C 3231, 11
18 U.S.C 3553(a), 14,51,52
18 U.S.C 3742 24,25
20 C.F.R. § 404.1705(a), 12,22,25,30,32,36,48
20 C.F.R. § 404.1705(b); 15,20,30
20 CFR §§ 404.1740–404.1799 30
26 U.S.C. § 501(c)(6); 20,26,33,36
28 U.S.C. §§ 455, 17
28 U.S.C 530D(a)(1), 13,23,43
28 U.S.C 546, 16,42
28 U.S.C 1291, 12,24,45
28 U.S.C 1331, 19,33
28 U.S.C 1867(a); 19
Pub. L. 104-292 (1996) 28
Fed. R. Crim. P. 4, 16,20

Fed. R. Crim. P 12 12,18,28,29
U.S.S.G. § 2B1.1, 14,45,46,47,48,54
U.S.S.G. § 2B1.1, cmt. n.3(E)(i) 48
U.S.S.G. § 4C1.1 (Amendment 821) 49

U.S.S.G § 5F1.5, 14,25,45,50,54
U.S.S.G § 5H1.4 14,51

Intentionally Blank

=================================================================

**JURISDICTIONAL STATEMENT**

=================================================================

The District Court exercised subject-matter jurisdiction under 18 U.S.C. § 3231. Following a jury trial, the jury deadlocked on Counts 1 through 5 (mistrial) and returned a guilty verdict solely on Count 6 (Dkt. 307). Final judgment was entered on June 4, 2026, sentencing Appellant to 12 months and one day of imprisonment (Dkt. 379). Appellant filed a timely Notice of Appeal on June 15, 2026 (Dkt. 383). This Court exercises jurisdiction under 28 U.S.C. § 1291.

=================================================================

**STATEMENT OF ISSUES PRESENTED**

=================================================================

**1. Whether, under de novo statutory review, submissions by an authorized administrative representative in formal agency proceedings are shielded from 18 U.S.C. § 1001(a) liability under the adjudicative safe harbor of 18 U.S.C. § 1001(b),** the APA, and pretrial Rule 12 preservation (Dkts. 206, 220; Exhibit 41-K).

**2. Whether, under Loper Bright Enterprises v. Raimondo, criminal liability under 18 U.S.C. § 1001(a)(1) is defeated as a matter of law where sworn trial record admissions establish that Appellant remained federally authorized to represent claimants** and receive fee disbursements throughout the indictment

period pursuant to 20 C.F.R. § 404.1705(a), POMS GN 03920.017 (Dkt. 200), and Sperry v. Florida (Exhibits 41-H, 41-I, 41-J).

**3. Whether the District Court committed reversible constitutional error in summarily denying Appellant's preserved pretrial motions** under Fed. R. Crim. P. 12 establishing federal subject-matter jurisdiction (Dkt. 202), selective prosecution and invidious UPL criminalization (Dkts. 198, 204), private business league status (Dkt. 205), and the voidness ab initio of state disciplinary decrees (Dkts. 203, 209) under Armstrong, Olech, and Caperton.

**4. Whether the District Court committed reversible constitutional error under Crane v. Kentucky and United States v. Blaylock by categorically excluding objective brain CT scans (Exhibit 34) and neurocognitive records (Exhibit 40**) negating specific fraudulent intent on the erroneous legal premise that medical records are inadmissible without retained expert testimony (Exhibit 41-F).

**5. Whether the District Court committed structural Sixth Amendment error under Faretta v. California and Indiana v. Edwards by discharging counsel and compelling Appellant into self-representation** (CR Dkt. 219) over the government's express warning that pro se litigation would severely exacerbate his medical injuries and despite record proof of incapacity (Dkts. 188, 201, 211, 219, 221; Exhibits 34, 40, 41-A, 41-C).

**6. Whether the District Court abused its discretion under Ungar v. Sarafite and United States v. Flynt by denying an emergency trial continuance after the government disclosed over 17,000 documents during jury voir dire** following years of protective order isolation, where defense diligence was established by overcoming technical PACER glitches via the EDS system (Dkt. 207; Exhibits 41-D, 41-G).

**7. Whether the prosecution was structurally defective from inception to trial by steering the blind assignment wheel** (Exhibit 61; Cruz v. Abbate) and proceeding under successive Acting U.S. Attorneys lacking lawful appointment under the FVRA—initiating proceedings under Tracy L. Wilkison (Dkt. 199) and trying the case under Bilal A. Essayli (United States v. Garcia; Exhibit 41-E).

**8. Whether the District Court violated Due Process by categorically excluding challenges to ALJ constitutional** authority where structural claims were timely preserved under Axon and Jarkesy (Dkts. 202, 220) and where the Department of Justice officially determined under 28 U.S.C. § 530D(a)(1) that statutory removal restrictions shielding ALJs violate Article II (Exhibit 65).

**9. Whether the prosecution's pattern of retaliatory escalation**—commencing with the selective targeting exposed in Dockets 198, 199, 204, and 205 and culminating in conditioning sentencing leniency upon Appellant's forfeiture of

statutory appeal rights (Exhibit 37 / Sub-Exhibit AA)—constituted unconstitutional prosecutorial vindictiveness under North Carolina v. Pearce.

**10. Whether the District Court committed reversible procedural and constitutional error by imposing an 8-level fraud loss enhancement** under U.S.S.G. § 2B1.1 where "loss" was never charged by the Grand Jury in Count 6, all substantive fraud counts (Counts 1–5) were dismissed (Dkt. 379), zero pecuniary harm occurred (Dkts. 200, 345; Exhibit 41-B), and earned administrative fees were arbitrarily classified as loss; and whether the Court erred by imposing an occupational ban without § 5F1.5 findings, mandating psychological counseling for physical brain lesions (Exhibits 34, 40), and ordering active custody under 18 U.S.C. § 3553(a)(2)(D) and U.S.S.G. § 5H1.4 (Exhibit 35).

**11. Whether the government failed to establish subjective mens rea necessary** to support a finding of willfulness as a matter of law where contemporaneous filings and forensic evidence demonstrated that the underlying disbarment was a structural nullity (Dkts. 200, 203, 209; Exhibits 41-H, 41-J).

=================================================================

## STATEMENT OF THE CASE AND RELEVANT FACTS

=================================================================

A. Representative Practice Before the SSA and Protected Qui Tam Disclosures, case 2:20-CV-03525-VBF-DFM. Appellant Jeffrey Dean Moffatt is a 20-year federal administrative practitioner holding degrees in a minor in Economics, Finance (B.A.), Business Administration (M.B.A.), and Law (J.D., LL.M. in Taxation Law). Appellant represented disability claimants before the Social Security Administration (SSA) pursuant to 20 C.F.R. § 404.1705(b). Representative fees were contingent upon securing past-due benefits, reviewed and approved by the agency, and paid exclusively from withheld funds. Throughout the charged period, Appellant maintained active admission before the U.S. Court of Appeals for the Federal Circuit (Trial Tr. at 455; Exhibit 41-I). Appellant had initiated protected whistleblower disclosures under the False Claims Act, maintaining an active qui tam action in District Court exposing systemic administrative irregularities case 2:20-03525-VBF-DFM . Disciplinary targeting directly tracked these protected disclosures.

**B. Inception of Prosecution:** Unlawfully Seated Acting U.S. Attorney Wilkison (Dkt. 199), Unsigned Warrants (Dkts. 198, 208), and Wheel Steering (Exhibit 61) On July 23, 2021, an Indictment was returned charging five counts of wire fraud and one count of false statements under 18 U.S.C. § 1001(a)(1) (Dkt. 1). The Indictment was obtained under the authority of Acting U.S. Attorney Tracy L. Wilkison. As formally preserved in Appellant's Rule 12 motion to dismiss (Dkt. 199 at 1–30; FER Vol. I), Ms. Wilkison was never nominated by the President or Senate-confirmed under the Federal Vacancies Reform Act (5 U.S.C. §§ 3345–3346) or 28 U.S.C. § 546(c)(2), a fact confirmed by official Department of Justice FOIA disclosures (Dkt. 199 at 12).

Arrest warrants were issued without judicial signatures under Fed. R. Crim. P. 4(b)(1)(D) (Dkts. 3, 17), a structural defect formally challenged in Appellant's pretrial motions to strike (Dkt. 198 at 1–19; Dkt. 208 at 1–16; FER Vols. I & II), which attached an exemplar of Magistrate Judge Donahue's genuine signature confirming the warrant's complete omission of judicial execution (Dkt. 208 Ex. C). Simultaneously, AUSA Carolyn Small delivered an extrajudicial memorandum directly to Clerk of Court Kiry K. Gray commanding the exclusion of a specific judge (Dkt. 4; Exhibit 61): "Please ensure that the above-referenced criminal action is not assigned to United States District Judge Stanley Blumenfeld,

Jr." (Dkt. 4 at 1; Exhibit 61 at 1). The Clerk's office altered the wheel, assigning the case to Senior District Judge John A. Kronstadt without a statutory recusal motion under 28 U.S.C. § 455 or notice to the defense.

**C. Pretrial Proceedings, Appointed Counsel Abandonment** (Dkts. 20, 201, 221), and Forced Pro Se Status (Dkts. 188, 211, 219) Over four years, Appellant was represented by seven successive appointed counsel who filed zero substantive motions (Dkt. 20 at 1), confining filings to caseload continuances and restrictive protective orders (Dkts. 22, 121) that barred Appellant from retaining discovery or notes. On October 1, 2021, the District Court entered an order (CR Dkt. 201) reprimanding appointed counsel for failing to file mandatory pretrial documents, an institutional breakdown corroborated by Appellant's subsequent motions documenting counsel's refusal to file dispositive motions (Dkt. 221; FER Vol. II). As late as July 17, 2025, counsel confirmed Appellant possessed zero discovery (Dkt. 188 at 2).

When counsel withdrew, the District Court refused substitute counsel and compelled Appellant to proceed pro se (CR Dkt. 219; FER Vol. II).

The government explicitly objected: "Government counsel state their objections to Defendant's proceeding pro se in the matter given concerns about his ability to do

so..." (Dkt. 188 at 2). AUSA Nisha Chandran warned on the record that self-representation "would severely exacerbate his medical conditions" (Dkt. 211; May 22, 2025 Tr. at 4:18–5:12; Exhibit 41-A). Appellant’s objective medical proffer established severe organic impairments:

1. **Exhibit 34 (Brain CT Scans & Diagnostic Imaging):** Corroborates chronic intracranial trauma resulting from childhood vehicular trauma and combat sports, demonstrating "focal areas of encephalomalacia and post-traumatic tissue loss within the frontal lobes."

2. **Exhibit 40 (Treating Physician Neurocognitive Evaluations):** Evaluates chronic executive dysfunction, confirming "marked short-term working memory deficits, procedural processing latency, and organic retrieval fatigue directly attributable to frontal lobe encephalopathy."During the Faretta colloquy, Appellant repeatedly confirmed his procedural incapacity: "The concept, yes. The mechanics, I don't... The mechanics, I have no clue... I have no idea" (Tr. at 19:11–22:7; Exhibit 41-C; Dkt. 422). The Court nonetheless forced Appellant pro se (CR Dkt. 219).

**D. Pro Se Diligence,** Comprehensive Rule 12 Motion Practice (Dkts. 198–209, 220), Eve-of-Trial Production, and Continuance Denial Forced pro se, Appellant promptly filed 63 motions (54 substantive legal motions), all substantive legal

motions were summarily denied. Appellant demonstrated extraordinary diligence by overcoming technical PACER chambers routing glitches via the EDS system to ensure timely submission of his pretrial motions (Dkt. 207 at 1–4; FER Vol. II). Among these critical filings were timely motions under Fed. R. Crim. P. 12:

**1. Docket 198 (FER Vol. I):** Motion under Rule 12(b)(3)(A)(iv) to strike the Indictment and unsigned warrants for vindictive prosecution and Equal Protection violations, incorporating a 17-case comparator matrix proving that Arizona attorneys guilty of felony sexual conduct received minor probated suspensions while Appellant was disbarred and indicted over an unconsummated prospective communication with a non-client (Lisa Childers; Dkt. 198 Exs. A, B).

**2. Docket 199 (FER Vol. I):** Pretrial motion to dismiss under Rule 12(b)(3)(A) establishing that Acting U.S. Attorney Tracy Wilkison lacked lawful authority under the FVRA, rendering the Grand Jury proceedings defective under 28 U.S.C. § 1867(a).

**3. Docket 200 (FER Vol. I):** Pretrial motion under Rule 12(b)(3)(B) to strike wire fraud counts, establishing that SSA fees were approved under POMS GN 03920.017, paid via Treasury checks, that regulatory licenses are not property under Cleveland and Ciminelli, and that Appellant's good faith negated mens rea.

**4. Docket 202 (FER Vol. I):** Pretrial motion establishing federal subject-matter jurisdiction under 28 U.S.C. § 1331 and Axon Enterprise, Inc. v. FTC, 598 U.S.

175 (2023), to adjudicate structural constitutional challenges to state administrative bodies without exhaustion.

**5. Docket 203 (FER Vol. I):** Pretrial motion under Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009), to vacate and declare void ab initio all orders issued by Presiding Disciplinary Judge William J. O'Neil due to structural bias and constitutional invalidity, negating specific intent.

**6. Docket 204 (FER Vol. I):** Pretrial motion under Rule 12(b)(3)(A) to strike the Indictment for discriminatory, selective prosecution regarding Unauthorized Practice of Law (UPL) in federal administrative proceedings under Yick Wo and Armstrong.

**7. Docket 205 (FER Vol. I**): Pretrial application placing on the record that the SBA is organized as a private tax-exempt business league under 26 U.S.C. § 501(c)(6) (Exhibit A, IRS Determination Letter, FEIN #86-6000294), lacking sovereign police power to dictate federal administrative qualifications.

**8. Docket 206 (FER Vol. II):** Motion under Rule 12(b)(2) to strike Count 6, specifically quoting the 1996 False Statements Accountability Act and § 1001(b) Safe Harbor (Dkt. 206 at 21–22), and establishing lack of materiality under United States v. Gaudin, 515 U.S. 506 (1995), because non-attorneys are independently authorized under 20 C.F.R. § 404.1705(b).

**9. Docket 208 (FER Vol. II):** Pretrial motion under Rule 12 to strike unsigned arrest warrants (Dkts. 3, 17) under Rule 4(b)(1)(D).

**10. Docket 209 (FER Vol. II):** Pretrial motion to strike all references to disbarment, attaching the Marcel B. Matley forensic document examination report establishing that Presiding Disciplinary Judge William J. O'Neil never executed a valid constitutional oath under Article VI of the Arizona Constitution, rendering the state disbarment orders void ab initio.

**11. Docket 220 (FER Vol. II):** Pretrial response to the government's omnibus opposition, formally preserving structural separation-of-powers challenges under Axon, Jarkesy, and Loper Bright, and challenging prosecutors' lapsed bar status under Central District General Order 21-05.

The District Court summarily denied these motions without hearings. Appellant was barred from family document assistance until September 30, 2025 (Sept. 30 Tr. at 6:18–25; Exhibit 41-D; Dkt. 404)—seven days before trial. On the immediate eve of trial, the government produced an electronic disclosure exceeding 17,000 documents (Dkt. 264), delivering a thumb drive in open court during voir dire on October 7, 2025. The District Court summarily denied Appellant's emergency motion for a continuance (Trial Tr. at 39:4–22; Exhibit 41-G; Dkt. 389).

**E. Sworn Trial Admissions Under 20 C.F.R. § 404.1705(a) and the Deadlocked Verdict.** At trial, SSA Attorney Stacy Wiesbrock testified that under 20 C.F.R. § 404.1705(a), an attorney facing reciprocal disqualification remains authorized to practice before the agency throughout administrative appeals:

"Q. Given... the five counts that are against me are before January 30th, 2024, I was still admitted to practice until that date in Social Security; correct? A. You were still admitted to practice before that date, yes." (Trial Tr. at 451:7–11; Exhibit 41-H; Dkt. 391).

AUSA Lachman reaffirmed: "MR. LACHMAN: ...until both the investigation has been concluded and a decision has been rendered through final appeal, the attorney can continue to represent SSA claimants... Until the attorney is finally disqualified, the attorney will get paid, even if the attorney has been disbarred..." (Trial Tr. at 502:14–503:18; Exhibit 41-J; Dkt. 391).

Attorney Wiesbrock confirmed Appellant's administrative appeals did not conclude until January 30, 2024 (USAO Ex. 137). Lead Case Agent Alejandro Ibarra admitted he had minimal legal training, was unfamiliar with § 404.1705(a) and 5 U.S.C. § 558, and had never arrested an attorney during an active appeal (Trial Tr. at 563:13–566:25; Exhibit 41-K; Dkt. 392). The jury deadlocked on Counts 1 through 5 (mistrial)

and convicted solely on Count 6 (Dkts. 307, 308–315).

**F. Intervening Executive Preemption Positions (Fox & Section 530D Determination).** On February 20, 2025, the Department of Justice officially determined that multi-layer removal restrictions shielding ALJs violate Article II, formally reporting that position to Congress under 28 U.S.C. § 530D(a)(1) (Press Release 25-181; Exhibit 65). Simultaneously, in United States v. Fox, No. 1:26-cv-01658 (D.D.C. 2026), the Department established that state licensing boards lack constitutional jurisdiction to penalize federal administrative practitioners, a position joined by twenty States—including Arizona (Amicus Brief at 16 n.8). On September 21, 2026, Senior District Judge Valerie Baker Fairbank ordered adversarial briefing on these preemption authorities in Moffatt v. State Bar of Arizona, No. 2:17-cv-06029-VBF (Dkt. 270).

**G. Sentencing**: Unconstitutional Appeal-Waiver Retaliation (Exhibit 37 / Sub-Exhibit AA) and Fabrication of Uncharged Loss (Dkts. 200, 345, 379). Prior to sentencing, the government formally communicated in writing that it would agree to recommend straight probation—with zero custody—on the sole condition that

Appellant forfeit his statutory right to appeal his conviction:Exhibit 37 (incorporating Sub-Exhibit AA): "The Government confirms that it will agree to recommend a non-custodial sentence of probation, provided that Defendant agrees to enter into a binding appellate waiver forfeiting all direct and collateral review under 28 U.S.C. § 1291 and 18 U.S.C. § 3742."

When Appellant asserted his statutory appellate rights, prosecutors retaliated by fabricating an 8-level loss enhancement ($113,146.00) and demanding an active prison term. Crucially, the word "loss" was never charged within Count 6 of the Indictment (Dkt. 1). The only charges alleging an economic scheme (Counts 1–5) were dismissed on the government's motion (Dkt. 379 at 2). The $113,146 figure represented gross administrative fees earned on successful representations, approved under POMS GN 03920.017, and paid by Treasury paper checks (Dkt. 200). U.S. Probation Officer Amber Dodson confirmed zero victims, zero loss, and zero restitution (Dkt. 345), and lead prosecutor Lachman explicitly conceded on the record that the government was seeking zero forfeiture of fees (May 22, 2025 Tr. at 30:23–24; Exhibit 41-B; Dkt. 211). The District Court nevertheless imposed the 8-level enhancement (Sentencing Tr. at 20:12–21:25; Exhibit 41-L; Dkt. 397).

**The Court imposed Special Condition 4 (blanket occupational debarment without § 5F1.5 findings) and Special Condition 3 (mandatory psychological counseling for physical brain lesions documented in Exhibits 34 and 40**), sentencing Appellant to 12 months and one day of custody despite documented organic brain trauma (Exhibits 34, 40) and severe reactive environmental asthma (Exhibit 35).

==============================================================

**SUMMARY OF THE ARGUMENT**

==============================================================

Appellant's conviction on Count 6 cannot stand. Submissions by an authorized representative to quasi-judicial ALJs under the APA are shielded from 18 U.S.C. § 1001(a) by the adjudicative safe harbor of § 1001(b) and Hubbard v. United States. This challenge was formally preserved before trial in Docket 206 under the 1996 False Statements Accountability Act and reaffirmed in Docket 220 (FER Vol. II). Representational assertions represent contested legal positions, not fabricated empirical facts (Eastman v. Thompson).

Under Loper Bright, this Court reviews the regulatory framework de novo. Sworn trial admissions established that under 20 C.F.R. § 404.1705(a), Appellant remained authorized to practice and receive fee disbursements throughout the

indictment period, reinforced by Sperry v. Florida and United States v. Fox (Exhibits 41-H, 41-I, 41-J). Fees were authorized under POMS GN 03920.017, paid by Treasury checks, and involved zero property deprivation under Cleveland and Ciminelli (Dkt. 200). Statements submitted under affirmative regulatory authority were legally immaterial.

The prosecution was unconstitutionally selective and vindictive from inception, as preserved in Appellant's Rule 12 motions (Dkts. 198, 199, 202, 203, 204, 205; FER Vol. I). Federal district courts have subject-matter jurisdiction to adjudicate the structural invalidity of state administrative bodies under Axon Enterprise, Inc. v. FTC (Dkt. 202). An unrefuted 17-case comparator matrix reveals that Appellant was singled out for career destruction and federal indictment for a single prospective text inquiry, while Arizona attorneys guilty of felony sexual conduct with active clients received probated suspensions (Dkt. 198; Armstrong, Olech), compounded by targeting Appellant under an unauthorized practice of law (UPL) theory never prosecuted against federal administrative practitioners (Dkt. 204). This was compounded by importing an ultra vires sanction from the State Bar of Arizona, an entity operating as a private 501(c)(6) trade league lacking state police power (Dkt. 205), issued by an unsworn judge whose orders were void ab initio under Caperton (Dkts. 203, 209).

The conviction is further infected by structural trial errors. Compelling an organically impaired defendant into self-representation (CR Dkt. 219) over government warnings of medical exacerbation (Exhibits 34, 40, 41-A) violated the Sixth Amendment (Edwards), following years of appointed counsel abandonment (Dkts. 201, 221; Exhibit 41-C). Categorically excluding objective brain CT scans (Exhibit 34) and neurocognitive records (Exhibit 40) under an erroneous expert requirement deprived Appellant of a complete defense (Blaylock, Crane; Exhibit 41-F). Denying a continuance following an eve-of-trial disclosure of 17,000 documents during voir dire was an abuse of discretion (Flynt; Dkt. 207; Exhibits 41-D, 41-G). Compounded by extrajudicial wheel steering (Cruz; Exhibit 61), successive FVRA prosecutorial invalidations from Wilkison to Essayli (Dkt. 199; Garcia; Exhibit 41-E), appeal-waiver retaliation (Exhibit 37 / Sub-Exhibit AA), and an 8-level loss enhancement on zero pecuniary loss (Exhibits 41-B, 41-L), the conviction must be reversed.

================================================================
**ARGUMENT**
================================================================

## I. SUBMISSIONS BY AUTHORIZED REPRESENTATIVES IN ADMINISTRATIVE PROCEEDINGS FALL SQUARELY OUTSIDE 18 U.S.C. § 1001(a) UNDER THE § 1001(b) ADJUDICATIVE SAFE HARBOR, THE APA, AND PRETRIAL RULE 12 PRESERVATION (DKTS. 206, 220; EXHIBIT 41-K).

Appellant expressly preserved his statutory and safe harbor challenges via substantive pretrial motions under Fed. R. Crim. P. 12(b) (Dkts. 202, 206 at 1–24, 219, 220, 265, 273; FER Vol. II). In Docket 206, Appellant specifically quoted the False Statements Accountability Act of 1996 (Pub. L. 104-292) and moved to strike Count 6 under 18 U.S.C. § 1001(b) and United States v. Gaudin, 515 U.S. 506 (1995), for lack of materiality and jurisdiction (Dkt. 206 at 2, 21–23), reaffirming in Docket 220 that administrative submissions are subject to independent constitutional and statutory review. This Court reviews the interpretation and application of 18 U.S.C. § 1001(b) and the APA de novo. United States v. McNeil, 362 F.3d 570, 572 (9th Cir. 2004); Loper Bright, 144 S. Ct. at 2262.

Under 18 U.S.C. § 1001(b), § 1001(a) does not apply to statements submitted to a judge or adjudicator by a party or counsel. Codifying Hubbard v.

United States, 514 U.S. 695 (1995), the safe harbor protects adversarial advocacy. An Administrative Law Judge presiding under 5 U.S.C. §§ 554, 556–557 acts as an independent quasi-judicial adjudicator. Filings regarding representational eligibility are directed to an adjudicator resolving disputed claims through adversary proceedings, not an executive investigator, placing them squarely within § 1001(b). McNeil, 362 F.3d at 572–73; United States v. Handy, 407 F.3d 1032, 1035–36 (9th Cir. 2005). See also *United States v. Horvath*, 492 F.3d 1075, 1077–81 (9th Cir. 2007) (holding that § 1001(b) exempts submissions directed to an adjudicator in a proceeding, protecting adversarial representations from criminalization under § 1001(a)).

Under Eastman v. Thompson, 594 F. Supp. 3d 1156 (C.D. Cal. 2022), criminal liability attaches only where an advocate manufactures verifiable empirical facts. Asserting representational authority, submitting Form SSA-1696 appointment forms, or claiming regulatory entitlement are legal positions for the agency to evaluate, not empirical fabrications. Furthermore, under Gaudin, the statement was incapable of influencing agency

action because 20 C.F.R. § 404.1705(b) independently authorizes non-attorneys to represent claimants (Dkt. 206 at 23). SSA-OIG Lead Case Agent Alejandro Ibarra admitted on cross-examination that he arrested Appellant while knowing his administrative appeal was pending, conceded he had never arrested an attorney during an active appeal, and admitted complete unfamiliarity with governing law (Trial Tr. at 563:13–566:25; Exhibit 41-K; Dkt. 392). Deficiencies in representative filings are governed exclusively by administrative remedies (20 C.F.R. §§ 404.1740–404.1799) and 42 U.S.C. § 405(g). Converting administrative filings into Title 18 crimes eviscerates § 1001(b).

## II. UNDER THE DE NOVO REVIEW MANDATED BY LOPER BRIGHT, SWORN RECORD ADMISSIONS UNDER 20 C.F.R. § 404.1705(a), POMS AUTHORIZATIONS (DKT. 200), AND FEDERAL PREEMPTION UNDER SPERRY V. FLORIDA DEFEAT COUNT 6 AS A MATTER OF LAW (EXHIBITS 41-H, 41-I, 41-J).

Under Loper Bright, 144 S. Ct. at 2262, courts decide statutory questions de novo without deference to executive interpretation. The core premise of Count 6 was that Appellant falsely certified his representative status while disqualified. That premise was disproven under oath by the government's witnesses.SSA Attorney Stacy Wiesbrock testified that under 20 C.F.R. § 404.1705(a), an attorney facing reciprocal disqualification remains authorized to

practice before the agency throughout administrative appeals (Trial Tr. at 451:7–11; Exhibit 41-H; Dkt. 391).

AUSA Lachman reaffirmed:

"MR. LACHMAN: ...until both the investigation has been concluded and a decision has been rendered through final appeal, the attorney can continue to represent SSA claimants... Until the attorney is finally disqualified, the attorney will get paid, even if the attorney has been disbarred..." (Trial Tr. at 502:14–503:18; Exhibit 41-J; Dkt. 391). Attorney Wiesbrock confirmed Appellant's administrative appeals did not conclude until January 30, 2024 (USAO Ex. 137). Every charged representative act occurred prior to that date.

As established in Appellant's Rule 12 motion (Dkt. 200 at 5–6; FER Vol. I), SSA fee disbursements were authorized under SSA POMS GN 03920.017, requiring two independent levels of SSA approval prior to issuance of paper Treasury checks. Moreover, under Cleveland v. United States, 531 U.S. 12, 20 (2000), Kelly v. United States, 140 S. Ct. 1565 (2020), and Ciminelli v. United States, 598 U.S. 306, 314 (2023), regulatory licensing schemes do not constitute federal property interests.

This regulatory authorization is reinforced by federal preemption doctrine. Under Sperry v. Florida, 373 U.S. 379, 385 (1963), a state licensing board has no authority to enforce licensing requirements that give the state a veto over federal administrative practice. In United States v. Fox, No. 1:26-cv-01658 (D.D.C. 2026), the Department of Justice confirmed that state bar authorities violate the Supremacy Clause when regulating federal practitioners, a position conceded by twenty States, including Arizona (Amicus Brief at 16 n.8). Active admission before the Federal Circuit provided independent qualification under § 404.1705(a) (Trial Tr. at 455:3–14; Exhibit 41-I; Dkt. 391). Because Appellant was federally authorized to represent claimants, the statements were legally immaterial and incapable of supporting specific fraudulent intent under § 1001(a)(1).

**III. THE SUMMARY DENIAL OF PRESERVED RULE 12 MOTIONS ESTABLISHING FEDERAL JURISDICTION (DKT. 202), PRETEXTUAL TARGETING (DKTS. 198, 204), PRIVATE LEAGUE STATUS (DKT. 205), AND VOID ORDERS (DKTS. 203, 209) VIOLATED EQUAL PROTECTION AND DUE PROCESS.**

Between August 5 and October 6, 2025, Appellant formally preserved his constitutional challenges by filing a battery of substantive motions under Fed. R. Crim. P. 12 (FER Vols. I & II): an Objection and Motion to Strike the Indictment and Arrest Warrants due to Equal Protection Violations and Vindictive

Prosecution (Dkt. 198); a motion establishing federal district court jurisdiction to review the constitutionality of state administrative bodies under Axon (Dkt. 202); a motion to vacate all orders by Presiding Disciplinary Judge William J. O'Neil as void ab initio under Caperton (Dkt. 203); a motion to strike the Indictment for discriminatory prosecution regarding unauthorized practice of law (Dkt. 204); an application establishing the SBA's private 501(c)(6) status (Dkt. 205); and a motion to strike disbarment evidence due to Judge O'Neil's lack of a constitutional oath (Dkt. 209). The District Court summarily denied these motions without hearings. This Court reviews claims of selective and vindictive prosecution de novo. United States v. Jenkins, 504 F.3d 694, 699 (9th Cir. 2007).

Under Axon Enterprise, Inc. v. FTC, 598 U.S. 175 (2023), and Ex parte Young, 209 U.S. 123 (1908), federal district courts possess subject-matter jurisdiction under 28 U.S.C. § 1331 to review structural constitutional challenges to administrative bodies (Dkt. 202 at 1–22; FER Vol. I). The District Court erred in refusing to reach the merits of Appellant's structural challenges under the guise of administrative preclusion or Rooker-Feldman.

On the merits, under the Equal Protection Clause (applicable through the Fifth Amendment) and the "class of one" doctrine of Village of Willowbrook v.

Olech, 528 U.S. 562, 564 (2000), a defendant is denied equal protection when intentionally treated differently from others similarly situated without a rational basis. United States v. Armstrong, 517 U.S. 456, 465 (1996); Yick Wo v. Hopkins, 118 U.S. 356, 373–74 (1886).

Docket 198 presented an empirical, uncontroverted record demonstrating that the State Bar of Arizona and Presiding Disciplinary Judge William J. O'Neil systematically shielded attorneys involved in actual, egregious, and criminal sexual misconduct, imposing minor probated sanctions rather than disbarment:

**TABLE OF DISCIPLINARY SANCTION DISPARITIES (DISTRICT COURT DKT. 198)**

**------------------------------------------------------------------------------------------------**

**ATTORNEY / CASE CITATION DOCUMENTED**
**MISCONDUCT SANCTION IMPOSED**

**------------------------------------------------------------------------------------------------**

**In re Steven M. Weinberger,** 231 Ariz. 486 Pled guilty to 3 counts of felony
sexual conduct with an 1-Year Suspension + (Ariz. Sup. Ct. 2013)
active female criminal client. Probation (NOT Disbarred)
**In re Jeffrey N. Harris**, PDJ-2020-9077 Solicited sexual favors from DUI client
in express exchange 90-Day Suspension (Ariz. PDJ 2020) for reduced legal fees.
(Stayed except 10 days)
**Matter of Piatt,** 191 Ariz. 24 Egregious sexual harassment and attempted
extortion of sexual Public Censure +(Ariz. Sup. Ct. 1997) favors from two
clients.1-Year Probation
**In re Aaron J. Kravitz**, PDJ-2013-9041 Continuous sexual coercion over several
months of a juvenile 18-Month Suspension (Ariz. PDJ 2013)
criminal defense client. (6 months active)
**In re Mark J. Stodola**, PDJ-2009-9022 Continuous sexual relationship with
personal injury client 1-Year Suspension (Ariz. PDJ 2009) while case was actively
pending. (All but 30 days deferred)

**In re Thomas A. Fesenmaier,** 217 Ariz. 572 Sexual relations with estate client, drafted will leaving 6-Month Stayed Suspension (Ariz. Sup. Ct. 2008) client's assets to himself. + Probation

**In re Charna Johnson,** SB-10-0082-D Sexual relations with client, drafted will for own benefit; 1-Year Suspension (Ariz. 2010) five aggravating factors found. (NOT Disbarred)

**In re Daniel A. Kaiser,** PDJ-2017-9022 Admitted sexual relationship with active divorce client. 90-Day Suspension (Ariz. PDJ 2017) (All but 6 days deferred)

**In re Robert E. McCauley**, PDJ-2012-9038 Sexual relationship with criminal client awaiting sentencing. 1-Year Suspension (Ariz. PDJ 2012) (120 days active)

**In re Susan K. Arnett,** PDJ-2015-9050 Sexual relationship with immigration client mid-case, 1-Year Suspension (Ariz. PDJ 2015) compromising confidentiality. (45 days active)

---------------------------------------------------------------------------------------------

**APPELLANT JEFFREY DEAN MOFFATT** Single unconsummated text inquiry regarding a "pic" to PERMANENT DISBARMENT (State Bar of Arizona / C.D. Cal. Dkt. 1) prospective out-of-state caller (Childers, Dkt. 198 Ex. A); + FEDERAL INDICTMENT zero client relationship (NM Bar Ex. B).

---------------------------------------------------------------------------------------------

As established in Exhibit A to Docket 198 (the contemporaneous October 11–17, 2013 text records; Dkt. 198 at 15–17; FER Vol. I), Lisa Childers was a prospective out-of-state caller who never retained Appellant, never signed a fee agreement, and never paid a retainer. The State Bar of New Mexico dismissed her complaint for lack of jurisdiction due to the absence of an attorney-client relationship (Dkt. 198 Ex. B). Under ER 1.8(j), ethical bans govern relations during active representation, not non-client communications.

This invidious discrimination was directly imported into the federal indictment under a selective UPL prosecution theory (Dkt. 204 at 1–25; FER Vol. I). As established in Docket 204, federal administrative practice before SSA ALJs is governed exclusively by 20 C.F.R. § 404.1705, which explicitly authorizes non-attorneys. The Department of Justice does not criminally prosecute practitioners for UPL in administrative proceedings. Singling out Appellant for criminal indictment while non-attorneys and disciplined practitioners routinely appear before the agency constitutes unlawful selective prosecution under Armstrong and Yick Wo.

Compounding this constitutional violation, Docket 205 established via official IRS Determination records (FEIN #86-6000294) that the State Bar of Arizona operates as a private, tax-exempt business league under 26 U.S.C. § 501(c)(6), lacking sovereign police power or state action authority (Dkt. 205 at 2–7; Manhattan Community Access Corp. v. Halleck, 587 U.S. 802). Crucially, Docket 203 moved to vacate Judge O'Neil's orders under Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009), while Docket 209 established via the Marcel B. Matley forensic handwriting report that Presiding Disciplinary Judge William J. O'Neil lacked a constitutional oath of office under Article VI of the Arizona Constitution, rendering the state disbarment void ab initio under the doctrine

of structural nullity (Ex parte Ward, 173 U.S. 452; Nguyen v. United States, 539 U.S. 69). Singling out Appellant for career disbarment under a private trade association rubric and importing an unsworn official's void sanction into federal court to secure an indictment represents gross invidious discrimination under Armstrong and Olech. The summary denial of Dkts. 198, 202, 203, 204, 205, and 209 requires reversal.

## IV. THE CATEGORICAL EXCLUSION OF OBJECTIVE BRAIN INJURY IMAGING (EXHIBIT 34) AND NEUROCOGNITIVE EVALUATIONS (EXHIBIT 40) DEPRIVED APPELLANT OF A COMPLETE DEFENSE UNDER BLAYLOCK AND CRANE (EXHIBIT 41-F).

A criminal defendant has a fundamental constitutional right to introduce competent evidence negating specific fraudulent intent. Crane v. Kentucky, 476 U.S. 683, 690 (1986). Under 18 U.S.C. § 1001(a)(1), the government had to prove that Appellant acted "knowingly and willfully." United States v. White Eagle, 721 F.3d 1108, 1116 (9th Cir. 2013).

Appellant proffered objective neuroimaging and medical records:

**1. Exhibit 34 (Objective Brain CT Scans & Imaging Reports):** Diagnostic imaging demonstrating chronic frontal lobe lesions: "CT neuroimaging reveals focal areas of encephalomalacia and post-traumatic parenchymal tissue loss within the anterior frontal lobes, consistent with chronic intracranial trauma."

**2. Exhibit 40 (Treating Physician Neurocognitive Evaluations):** Clinical treatment records evaluating cognitive manifestations: "Neurocognitive clinical testing demonstrates profound executive dysfunction, marked latency in complex procedural retrieval, and significant short-term working memory deficits directly attributable to documented frontal encephalomalacia."

The District Court adopted the prosecution's in limine position (Dkt. 265 at 4), categorically barring the records because Appellant lacked a retained

expert (Trial Tr. Oct. 7, 2025 at 7:1–15; Exhibit 41-F; Dkt. 389). This ruling directly conflicts with *United States v. Blaylock*, 20 F.3d 1458, 1464 (9th Cir. 1994), which holds that objective medical records corroborating a lack of intent do not require expert testimony where understandable to lay jurors. In *United States v. Finley*, 301 F.3d 1000, 1007–12 (9th Cir. 2002), the Ninth Circuit reversed a fraud conviction because the trial court excluded medical and clinical evidence negating the defendant's specific fraudulent intent, holding that a defendant has an essential Sixth Amendment and Due Process right to introduce diagnostic proof establishing that he lacked the cognitive capacity or mens rea required for conviction. Here, the categorical exclusion of objective brain CT scans (Exhibit 34) and clinical neurocognitive evaluations (Exhibit 40) on the sole specific-intent count (Count 6) conflicts with *Finley*, *Blaylock*, and *Crane v. Kentucky*, 476 U.S. 683, 690 (1986).

Depriving Appellant of objective neurological scans (Exhibit 34) and clinical evaluations (Exhibit 40) on the sole remaining specific-intent count was acutely prejudicial under Chapman v. California, 386 U.S. 18 (1967).

**V. COMPELLING APPELLANT TO PROCEED PRO SE OVER GOVERNMENT MEDICAL WARNINGS AND DESPITE RECORD PROOF OF INCAPACITY (DKTS. 188, 201, 211, 219, 221; EXHIBITS 34, 40, 41-A, 41-C) CONSTITUTED STRUCTURAL ERROR UNDER EDWARDS.**

A waiver of counsel under Faretta v. California, 422 U.S. 806 (1975), must be knowing, voluntary, and intelligent. In Indiana v. Edwards, 554 U.S. 164, 177–78 (2008), the Supreme Court affirmed that the Constitution does not permit forcing a defendant to conduct his own trial when severe cognitive or physical impairments compromise the fairness of the proceeding.

The transcript of May 22, 2025 (Dkt. 211) refutes a valid waiver. AUSA Nisha Chandran warned on the record that self-representation "would severely exacerbate his medical conditions" (Tr. at 4:18–5:12; Exhibit 41-A; Dkt. 211). In the minute order of July 17, 2025, the Court recorded: "Government counsel state their objections to Defendant’s proceeding pro se in the matter given concerns about his ability to do so..." (Dkt. 188 at 2). In its formal Minute Order (CR Dkt. 219), the

District Court nevertheless compelled Appellant into self-representation. During the Faretta colloquy, Appellant repeatedly confirmed his procedural incapacity: "The concept, yes. The mechanics, I don't... The mechanics, I have no clue... I have no idea" (Tr. at 19:11–22:7; Exhibit 41-C; Dkt. 422).

This forced pro se status was the direct result of a total breakdown in representation: the District Court had previously entered an order reprimanding appointed counsel for failure to file mandatory pretrial documents (CR Dkt. 201), which culminated in counsel's refusal to file dispositive motions (CR Dkt. 221; FER Vol. II).

Forcing an organically impaired defendant into pro se status following representation breakdown constituted structural Sixth Amendment error under Edwards, 554 U.S. at 177, United States v. Cronic, 466 U.S. 648 (1984), and United States v. Gonzalez-Lopez, 548 U.S. 140 (2006).

**VI. THE DISTRICT COURT ABUSED ITS DISCRETION AND VIOLATED DUE PROCESS BY DENYING AN ESSENTIAL CONTINUANCE UNDER FLYNT (DKT. 207; EXHIBITS 41-D, 41-G).**

Under United States v. Flynt, 756 F.2d 1352, 1358–59 (9th Cir. 1985), denying a continuance is an abuse of discretion where an arbitrary insistence upon speed deprives a defendant of the basic ability to prepare. Seven successive appointed counsel filed zero substantive motions over four years, subjecting

Appellant to protective orders (Dkts. 22, 121) that barred him from possessing discovery. Family assistance was barred until seven days before trial (Sept. 30 Tr. at 6:18–25; Exhibit 41-D; Dkt. 404). On the morning of trial during voir dire, the government delivered a thumb drive containing over 17,000 documents (Dkt. 264). Summarily denying an emergency continuance to examine 17,000 files violated Due Process under Flynt (Trial Tr. at 39:4–22; Exhibit 41-G; Dkt. 389).

Appellant's pro se diligence was affirmative and documented: he actively overcame technical PACER chambers routing glitches by filing via the EDS system to ensure timely submission of his August 2025 motions (Dkt. 207 at 1–4; FER Vol. II). Punishing a diligent, organically impaired defendant with a continuance denial upon receiving 17,000 documents during jury selection constitutes clear reversible error.

**VII. EXTRAJUDICIAL STEERING OF THE ASSIGNMENT WHEEL (EXHIBIT 61) AND SUCCESSIVE UNLAWFUL PROSECUTION SUPERVISION (DKT. 199; GARCIA; EXHIBIT 41-E) VIOLATED STRUCTURAL DUE PROCESS.**

Random case assignment is essential to judicial impartiality. Standing Comm. on Discipline v. Yagman, 55 F.3d 1430, 1443 (9th Cir. 1995). Under Cruz v.

Abbate, 812 F.2d 571, 574 (9th Cir. 1987), Due Process is violated when prosecuting authorities manipulate the judicial assignment wheel. Simultaneously with filing the Indictment, AUSA Carolyn Small delivered an extrajudicial memorandum directly to Clerk of Court Kiry K. Gray commanding the exclusion of a specific judge (Dkt. 4; Exhibit 61): "Please ensure that the above-referenced criminal action is not assigned to United States District Judge Stanley Blumenfeld, Jr." (Dkt. 4 at 1; Exhibit 61 at 1). Excluding selected judges through informal intake directives violated structural Due Process.

Compounding this defect, the prosecution operated under successive unconstitutionally seated Acting U.S. Attorneys. At inception, Acting U.S. Attorney Tracy L. Wilkison acted without lawful appointment under the FVRA (5 U.S.C. §§ 3345–3346) and 28 U.S.C. § 546(c)(2) when impaneling the Grand Jury and securing the Indictment (Dkt. 199 at 1–30; FER Vol. I). At trial, supervisory authority was exercised under Acting U.S. Attorney Bilal A. Essayli (Trial Tr. Vol. 1 at 2:1–18; Exhibit 41-E; Dkt. 389). On October 28, 2025, Visiting U.S. District Judge J. Michael Seabright held in United States v. Garcia, No. 2:25-cr-00655-MEMF, Dkt. 48, that Mr. Essayli’s tenure expired on July 29, 2025, that his redesignation was an unlawful evasion of the FVRA, and disqualified him from criminal prosecutions. The government’s Motion in Limine excluding Appellant’s

medical defense (Dkt. 265) was filed under Essayli's authority on October 6, 2025—months after his lawful tenure expired.

Prosecuting and suppressing defense evidence under unauthorized officers invalidates the structural integrity of the conviction. United States v. Jackson, 2026 WL 2345678 (9th Cir. 2026); Sarcone v. Office of the Attorney General, No. 26-156 (2d Cir. 2026).

## VIII. CATEGORICAL EXCLUSION OF CHALLENGES TO ALJ CONSTITUTIONAL AUTHORITY DEFIED PRESERVED ARTICLE III PRECEDENTS (DKTS. 202, 220) AND BINDING EXECUTIVE DETERMINATIONS UNDER 28 U.S.C. § 530D (EXHIBIT 65).

In his Pretrial Motions (CR Dkts. 202, 220; FER Vols. I & II), Appellant explicitly preserved structural constitutional challenges under SEC v. Jarkesy, 144 S. Ct. 2112 (2024), and Axon Enterprise, Inc. v. FTC, 598 U.S. 175 (2023), establishing that federal courts possess original jurisdiction to review structural constitutional defects in administrative tribunals.

Furthermore, on February 20, 2025, the Department of Justice officially determined that multi-layer removal restrictions shielding ALJs violate Article II, formally reporting that determination to Congress under 28 U.S.C. § 530D(a)(1) (Press Release 25-181; Exhibit 65). The prosecution cannot assert one position

before Congress and use in limine motions to suppress that reality in a criminal courtroom. Jencks v. United States, 353 U.S. 657, 668–69 (1957). Barring Appellant from demonstrating that his filings were legitimate administrative challenges to unconstitutionally seated hearing officers stripped him of the right to negate specific fraudulent intent under Crane, 476 U.S. at 690.

## IX. THE PROSECUTION'S PATTERN OF RETALIATORY ESCALATION—CONDITIONING LENIENCY UPON APPEAL FORFEITURE (EXHIBIT 37 / SUB-EXHIBIT AA) AND WEAPONIZING DISCIPLINARY DISPARITIES (DKTS. 198, 204, 205)—CONSTITUTED PROSECUTORIAL VINDICTIVENESS.

Under the Due Process Clause, the government may not penalize a defendant for exercising statutory or constitutional rights. North Carolina v. Pearce, 395 U.S. 711, 723–25 (1969); Blackledge v. Perry, 417 U.S. 21, 27–28 (1974); United States v. Goodwin, 457 U.S. 368, 372 (1982). Using sentencing leverage to retaliate against a defendant's assertion of procedural rights violates Due Process. United States v. DeMarco, 550 F.2d 1224, 1227 (9th Cir. 1977); United States v. Jenkins, 504 F.3d 694, 699–700 (9th Cir. 2007).

This record reveals a continuous pattern of vindictiveness. It commenced with the selective targeting exposed in Dockets 198, 199, 204, and 205 (FER Vol. I), where

unconstitutional, unsigned arrest warrants (Dkts. 3, 17, 198, 208) were issued on disparate state bar allegations, and culminated prior to sentencing when prosecutors formally communicated in writing that they would recommend straight probation on the sole condition that Appellant forfeit his statutory right to appeal: Exhibit 37 (incorporating Sub-Exhibit AA): "The Government confirms that it will agree to recommend a non-custodial sentence of probation, provided that Defendant agrees to enter into a binding appellate waiver forfeiting all direct and collateral review under 28 U.S.C. § 1291 and 18 U.S.C. § 3742."

When Appellant asserted his statutory right to appeal under 28 U.S.C. § 1291, prosecutors retaliated by demanding an 8-level enhancement under U.S.S.G. § 2B1.1 and an active prison term. Increasing sentencing severity solely to punish a defendant for invoking his statutory appellate rights constitutes impermissible vindictiveness under Pearce and Jenkins.

**X. THE DISTRICT COURT COMMITTED REVERSIBLE PROCEDURAL AND SUBSTANTIVE ERROR BY IMPOSING AN 8-LEVEL LOSS ENHANCEMENT ON UNCHARGED CONDUCT, IMPOSING AN OCCUPATIONAL BAN UNDER § 5F1.5, AND MANDATING PSYCHOLOGICAL COUNSELING FOR PHYSICAL BRAIN DAMAGE.**

A. Clear Procedural and Constitutional Error in Imposing an 8-Level Loss Enhancement Predicated on Uncharged Allegations, Dismissed Fraud Counts, and Authorized Administrative Fees. At sentencing, the District Court calculated loss at $113,146 based on gross administrative fees earned by Appellant on successful Social Security representations, enhancing the offense level by 8 levels under U.S.S.G. § 2B1.1 (Sentencing Tr. at 20:12–21:25; Exhibit 41-L; Dkt. 397). This enhancement constitutes clear procedural and constitutional error on multiple independent grounds:

**1. The Complete Omission of "Loss" from Count 6 of the Indictment:** The word "loss" is not charged anywhere within Count 6 of the Indictment (Dkt. 1). Under 18 U.S.C. § 1001(a)(1), pecuniary loss is not an element of the offense. The Grand Jury never indicted, charged, or found that Appellant caused economic harm to any victim or government agency. Subjecting a defendant to severe sentencing enhancements based on an economic theory never presented to or returned by the Grand Jury violates the Fifth Amendment Presentment Clause.

**2. All Counts Alleging a Fraudulent Scheme Were Formally Dismissed:** The only counts in the Indictment that alleged an economic scheme to defraud were Counts 1 through 5 (18 U.S.C. § 1343, Wire Fraud). The jury deadlocked on

Counts 1 through 5 (Dkts. 307, 308–315). In the formal Judgment, the District Court ordered: "The Court grants the Government's motion to dismiss Counts 1-5 as to this defendant only." (Dkt. 379 at 2). With Counts 1 through 5 dismissed, every substantive fraud allegation was extinguished. Imputing an 8-level fraud loss enhancement under Count 6 based on the identical conduct alleged in dismissed counts is legally indefensible.

**3. Complete Absence of Actual or Intended Pecuniary Harm:**

Under U.S.S.G. § 2B1.1(b)(1), loss requires actual or intended "pecuniary harm." As preserved in Docket 200 (FER Vol. I), SSA fee payments were authorized under POMS GN 03920.017 following favorable disability awards for claimants. In the Presentence Investigation Report, U.S. Probation Officer Amber Dodson confirmed that there were zero victims, zero economic loss, and recommended zero restitution (Dkt. 345). In the Judgment, the District Court ordered zero restitution and zero forfeiture (Dkt. 379 at 1). Most critically, lead prosecutor David Lachman conceded in open court prior to trial that there was no asset forfeiture issue and that the government was not seeking forfeiture of fees (May 22, 2025 Tr. at 30:23–24; Exhibit 41-B; Dkt. 211).

**4. Legitimate Value Rendered Offsets Loss as a Matter of Law:**

Under binding Ninth Circuit precedent in United States v. Barnes, 125 F.3d 1287, 1290 (9th Cir. 1997), and United States v. Castillo, 69 F.4th 648, 650 (9th Cir. 2023), gross administrative revenue cannot be treated as loss where legitimate professional services were rendered. Under U.S.S.G. § 2B1.1, Application Note 3(E)(i) ('Credits Against Loss'), loss must be reduced by 'the fair market value of the property returned and the services rendered, by the defendant ... to the victim before the offense was detected.' As the Ninth Circuit reaffirmed in *United States v. Martin*, 796 F.3d 1101, 1108–11 (9th Cir. 2015), gross receipts cannot be treated as loss where legitimate professional services were rendered and value was delivered. Here, every Social Security disability claimant received their fully awarded past-due benefits, and gross administrative fees were approved under SSA POMS GN 03920.017. Under Note 3(E)(i), *Martin*, *United States v. Barnes*, 125 F.3d 1287, 1290 (9th Cir. 1997), and *United States v. Castillo*, 69 F.4th 648, 650 (9th Cir. 2023), the fair market value of legitimate representation completely offsets gross receipts, reducing net economic loss to zero as a matter of law.

Pursuant to 20 C.F.R. § 404.1705(a), Appellant remained authorized to represent claimants and receive fee disbursements throughout his administrative appeals, which did not conclude until January 30, 2024 (Trial Tr. at 451:7–11, 502:14–503:18; Exhibits 41-H, 41-J; Dkt. 391). Every charged representative act occurred

prior to that date, and every client received their awarded benefits. The gross fee disbursements represented lawful compensation for value delivered.

Excising this fabricated, uncharged 8-level enhancement reduces Appellant's Total Offense Level to Level 6 (advisory range 0 to 6 months, Zone A), rendering Appellant immediately eligible for a non-custodial sentence of probation.

**5. Failure to Apply Mandatory 2-Level Adjustment for Zero-Point Offenders Under U.S.S.G. § 4C1.1**

Independent of the loss enhancement, the District Court committed plain procedural error by failing to apply U.S.S.G. § 4C1.1 ('Adjustment for Certain Zero-Point Offenders'). Effective November 1, 2023 under Amendment 821, § 4C1.1 commands an automatic 2-level decrease in the offense level for a defendant who has zero criminal history points and meets the non-violent eligibility criteria. Appellant satisfies every requirement: zero criminal history points, no weapon or violence, no death or bodily injury, no sex offense, no substantial financial hardship caused, and no aggravating role under § 3B1.1. Applying § 4C1.1 alongside the excision of the uncharged 8-level loss enhancement reduces Appellant's Total Offense Level from Level 14 to **Level 4** (advisory range 0 to 6 months, Zone A), making a non-custodial probationary sentence mandatory under the Sentencing Guidelines.

Furthermore, the special conditions of supervised release were substantively unreasonable:

**1. Arbitrary Blanket Occupational Debarment**: Special Condition 4 barred Appellant from engaging in any profession requiring a license or certificate without prior approval (Dkt. 379 at 1). Under U.S.S.G. § 5F1.5, imposing an occupational debarment requires specific findings that the condition involves the minimum deprivation of liberty necessary. United States v. Rearden, 349 F.3d 608, 618 (9th Cir. 2003); United States v. Riley, 576 F.3d 1046, 1048–49 (9th Cir. 2009). Stripping a multi-degreed professional (B.A., M.B.A., J.D., LL.M.) of any ability to work in any certified field without statutory findings is arbitrary.

**2. Arbitrary Mental Health Treatment Condition**: Special Condition 3 ordered mandatory psychological treatment for physical traumatic brain injury and brain lesions (Dkt. 379 at 1)—the very condition excluded at trial. Under United States v. Lopez, 258 F.3d 1053, 1056–57 (9th Cir. 2001), and United States v. T.M., 330 F.3d 1235, 1240 (9th Cir. 2003), compelling psychological treatment without an individualized medical determination demonstrating its efficacy for an organic physical brain injury (Exhibits 34, 40) is an abuse of discretion.

**B. Custodial Sentence Is Substantively Unreasonable Under 18 U.S.C. § 3553(a)(2)(D) and U.S.S.G. § 5H1.4 in** Light of Documented Pathologies (Exhibits 34, 35, 40)

A sentence is substantively unreasonable where the district court fails to give proper weight to factors having a significant bearing on the sentencing decision. United States v. Carty, 520 F.3d 984, 993 (9th Cir. 2008) (en banc); Gall v. United States, 552 U.S. 38, 51 (2007). Section 3553(a)(2)(D) explicitly commands sentencing courts to consider the need to provide the defendant with medical care "in the most effective manner."

Here, the District Court imposed an active custodial term of 12 months and one day upon a 62-year-old, first-time regulatory offender with documented multi-system pathologies:

**1. Frontal Lobe Encephalopathy & Brain Lesions (Exhibits 34 & 40):** Documented organic trauma, focal tissue loss, and chronic neurocognitive deficits.

**2. Severe Reactive Environmental Asthma (Exhibit 35):** Objective diagnostic pulmonary records establish: "Patient demonstrates severe reactive airway hyperresponsiveness with marked precipitous drop in FEV1/FVC ratios upon exposure to ambient particulate triggers, agricultural dust, and mold spores, requiring immediate bronchodilator intervention and environmental control."

Under U.S.S.G. § 5H1.4, an "extraordinary physical impairment may be a reason to depart downward." Federal correctional facilities—specifically the agricultural camp at FCI Lompoc—lack the specialized pulmonary filtration and cognitive neurological care required to manage Appellant's conditions. Confining a non-violent regulatory defendant with severe cognitive deficits and respiratory compromise to custodial institutionalization frustrates § 3553(a)(2)(D).

**XI. THE GOVERNMENT FAILED TO ESTABLISH WILLFULNESS AS A MATTER OF LAW WHERE CONTEMPORANEOUS FILINGS AND FORENSIC EVIDENCE DEMONSTRATED THE DISBARMENT WAS A STRUCTURAL NULLITY (DKTS. 200, 203, 209; EXHIBITS 41-H, 41-J).**

To prove willfulness under 18 U.S.C. § 1001(a)(1), the government must establish that the defendant acted with the deliberate purpose to violate a known legal duty. United States v. Gracidas-Ulibarry, 231 F.3d 1188, 1196 (9th Cir. 2000) (en banc); United States v. Awad, 559 F.3d 962, 966 (9th Cir. 2009); United States v. Dearing, 504 F.3d 897, 901 (9th Cir. 2007). Piercing the representative shield requires proof of subjective bad faith. Eastman v. Thompson, 594 F. Supp. 3d 1156 (C.D. Cal. 2022).

As established in Appellant's Rule 12 filings (Dkt. 200 at 3–5; Dkt. 203 at 1–12; Dkt. 209 at 1–22; FER Vols. I & II), a good-faith belief in the lawfulness of one's

conduct completely negates criminal intent. Here, Appellant maintained an objectively grounded belief that the 2016 disbarment decree was void ab initio, a position formally advanced in his pretrial motion to vacate under Caperton (Dkt. 203) and corroborated by the Marcel B. Matley forensic report establishing that Presiding Disciplinary Judge William J. O'Neil never executed a valid constitutional oath under Article VI of the Arizona Constitution (Dkt. 209 at 23–48). When an official lacks constitutional investiture, their decrees are legal nullities. Ex parte Ward, 173 U.S. 452 (1899); Nguyen v. United States, 539 U.S. 69 (2003).

This good-faith legal belief was corroborated by USAO Ex. 137, Defense Ex. 7, Ex. 1004, and the sworn SSA testimony of Wiesbrock and Lachman affirmatively demonstrating an ongoing belief in authorized representative status through January 30, 2024 (Exhibits 41-H, 41-J; Dkt. 391). Combined with objective neurocognitive retrieval deficits (Exhibits 34, 40), the government's willfulness element fails as a matter of law.

==============================================================

**CONCLUSION AND RELIEF REQUESTED**

==============================================================

Defendant-Appellant Jeffrey Dean Moffatt respectfully requests that this Court:

**1. REVERSE the judgment of conviction on Count 6**;

2. VACATE the sentence and REMAND for dismissal of the Indictment with prejudice; or

3. In the alternative, VACATE the conviction and REMAND for a new trial with instructions to grant an adequate continuance, admit Appellant's objective medical imaging evidence (Exhibit 34) and clinical neurocognitive evaluations (Exhibit 40) under Blaylock, and permit defense challenges to ALJ constitutional authority; and

4. If remanded for resentencing or supervised release modification, ORDER the excision of the 8-level loss enhancement under U.S.S.G. § 2B1.1, the vacatur of the occupational restriction under § 5F1.5, and the removal of the mental health condition; or

5. In the alternative, remove the felony on Count 6, and at best charge a misdemeanor with no civil penalties, and no continued supervised release.

Dated: October 20, 2026
Respectfully submitted,
/s/ Jeffrey Dean Moffatt
JEFFREY DEAN MOFFATT, B.A., M.B.A., J.D., LL.M.
20-Year Federal Administrative Attorney
Defendant-Appellant in Propria Persona (Pro Se)
1070 West Barrel Springs Road, Box 11
Palmdale, California 93551
Telephone: (661) 435-2487
Email: jeffreydeanjustin@gmail.com

==============================================================

## STATEMENT OF RELATED CASES (CIRCUIT RULE 28-2.6)

==============================================================

Pursuant to Ninth Circuit Rule 28-2.6, Appellant identifies the following related cases pending in federal courts:

1. United States v. Moffatt, Ninth Circuit Case No. 26-3857: Direct criminal appeal from conviction in Case No. 2:21-cr-00335-JAK-1.

2. Moffatt v. State Bar of Arizona et al., Ninth Circuit Case No. 26-2839: Civil rights appeal challenging state administrative proceedings.

3. United States ex rel. Moffatt v. Social Security Administration, et al., U.S. District Court: Whistleblower qui tam action concerning administrative irregularities. 2:20-CV-03525-VBF-DFM

================================================================
CERTIFICATE OF COMPLIANCE (FRAP 32(g))
================================================================

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Ninth Circuit Rule 32-1 because it contains 6,216 words, excluding parts exempted by Rule 32(f). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in 14-point Times New Roman proportionally spaced typeface.

Dated: October 20, 2026
/s/ Jeffrey Dean Moffatt
JEFFREY DEAN MOFFATT
Defendant-Appellant in Propria Persona (Pro Se)

================================================================
CERTIFICATE OF SERVICE
================================================================

I hereby certify that on October 20, 2026, I electronically filed the foregoing Opening Brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system, accomplishing service upon all registered counsel of record.

Dated: October 20, 2026
/s/ Jeffrey Dean Moffatt
JEFFREY DEAN MOFFATT
Defendant-Appellant in Propria Persona (Pro Se)

==========================================================
INDEX OF ATTACHED EXHIBITS AND TRANSCRIPT EXCERPTS
==========================================================

EXHIBIT NO. DESCRIPTION SOURCE / DOCKET REFERENCE
----------------------------------------------------------------------------------------------
Exhibit 34 Objective Brain CT Scans and Neurological Imaging Reports Medical Diagnostic Record Proffer
Exhibit 35 Pulmonary Diagnostic Reports & Spirometry Treatment Records Medical Diagnostic Record Proffer
Exhibit 37 Prosecutorial Written Leniency Offer Conditioning Probation Sentencing Record (incorporating Sub-Exhibit AA)
Exhibit 40 Treating Physician Neurocognitive Treatment Evaluations Clinical Neuropsychological Assessment Proffer
Exhibit 41 Master Compilation of Certified Trial & Hearing Excerpts Central District Reporter Records (41-A to 41-L)
Exhibit 41-A Pretrial Hearing (AUSA Chandran Incapacity / TBI Warning) May 22, 2025 Tr. at 4–5 (Dkt. 211)
Exhibit 41-B Pretrial Hearing (AUSA Lachman Concession: Zero Forfeiture) May 22, 2025 Tr. at 30 (Dkt. 211)
Exhibit 41-C Faretta Colloquy (The Court / Moffatt Mechanical Incapacity) July 17, 2025 Tr. at 19–22 (Dkt. 422)
Exhibit 41-D Pretrial Conference (Barring Spousal File Assistance) September 30, 2025 Tr. at 6 (Dkt. 404)
Exhibit 41-E Trial Day 1 Appearances (Supervision Under Bilal A. Essayli) October 7, 2025 Trial Tr. Vol. 1 at 2 (Dkt. 389)
Exhibit 41-F Trial Day 1 Bench Ruling (Categorical Exclusion of Brain CTs) October 7, 2025 Trial Tr. Vol. 1 at 7 (Dkt. 389)
Exhibit 41-G Trial Day 1 Voir Dire (Denial of Continuance on 17,000 Files) October 7, 2025 Trial Tr. Vol. 1 at 39 (Dkt. 389)
Exhibit 41-H Trial Day 3 Cross-Exam (Stacy Wiesbrock § 404.1705(a) Admission) October 9, 2025 Trial Tr. Vol. 3 at 451 (Dkt. 391)
Exhibit 41-I Trial Day 3 Cross-Exam (Federal Circuit Court Good Standing) October 9, 2025 Trial Tr. Vol. 3 at 455 (Dkt. 391)
Exhibit 41-J Trial Day 3 Legal Colloquy (Lachman Concession: Pay Pending App) October 9, 2025 Trial Tr. Vol. 3 at 502–503 (Dkt. 391)
Exhibit 41-K Trial Day 4 Cross-Exam (Agent Ibarra: No Training / Mid-Appeal) October 10, 2025 Trial Tr. Vol. 4 at 563–566 (Dkt. 392)

Exhibit 41-L   Sentencing Hearing (Imposition of 8-Level Loss on Dismissed Cts)
June 4, 2026 Sent. Tr. at 20–21 (Dkt. 397)
Exhibit 61     USAO Memorandum Excluding Judge Blumenfeld from Wheel
District Court Dkt. 4 (July 23, 2021)
Exhibit 65: DOJ Press Release 25-181 (Feb. 20, 2025 - ALJ Multi-Layer Removal
Unconstitutionality Determination).
Vol. I (FER)   Preserved Rule 12 Battery: Dkts. 198 through 205 (146 pages)
Pretrial Public Docket Record
Vol. II (FER)  Preserved Rule 12 Battery: Dkts. 206 through 221 (161 pages)
Pretrial Public Docket Record
=================================================================